**MILBERG LLP**
JEFF S. WESTERMAN (SBN 94559)
jwesterman@milberg.com
SABRINA S. KIM (SBN 186242)
skim@milberg.com
ANDREW J. SOKOLOWSKI (SBN 226685)
asokolowski@milberg.com
One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA  90071
Telephone: (213) 617-1200
Facsimile:  (213) 617-1975

**MILBERG LLP**
ANDREI V. RADO
arado@milberg.com
One Pennsylvania Plaza, 49th Floor
New York, NY  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BEVERLY KING and NANCY GLENNON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITIMORTGAGE, Inc., a member of CITIGROUP Inc.,<br><br>Defendant. | CASE NO. CV 10-03792 DSF (PLAx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>DATE:      March 7, 2011<br>TIME:      1:30 p.m.<br>CTRM.:    840<br>JUDGE:    Hon. Dale S. Fischer |

[Caption Continued on the Following Page]

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | | CASE NO.:  CV 10-03792 DSF (PLAx) |
|---|---|---|

DOCS\544268v1

| | |
|---|---|
| HANNA BERNARD, on behalf of herself and all other similarly situated, | ) CASE NO. 10-6292 DSF (PLAx) |
| Plaintiff, | ) |
| v. | ) |
| CITIMORTGAGE, INC., | ) |
| Defendant. | ) |
| MARIA BETANCOURT and PEDRO BETANCOURT, individually and on behalf of all others similarly situated, | ) CASE NO. 2:10-cv-7049 DSF (PLAx) |
| Plaintiffs, | ) |
| v. | ) |
| CITIMORTGAGE, INC., a New York corporation; CITIBANK, N.A., a national banking association; CITIGROUP, INC., a Delaware corporation; and DOES 1-100, | ) |
| Defendants. | ) |
| CARLA CHUI, MAURIZIO VERDINI, ELIZABETH DANIEL, on behalf of themselves and all others similarly situated, | ) CASE NO. CV 10-7385 DSF (PLAx) |
| Plaintiffs, | ) |
| v. | ) |
| CITIMORTGAGE, INC., | ) |
| Defendant. | ) |

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | | CASE NO.: CV 10-03792 DSF (PLAx) |
|---|---|---|
| DOCS\544268v1 | | |

1

# TABLE OF CONTENTS

2

**Page**

3    I.      INTRODUCTION ................................................................ 1

4    II.     STATEMENT OF FACTS ..................................................... 5

5
        A.     Citi Breached its Agreement To Deliver The Affordable Loan

6
               Modifications It Advertised and Promised ........................... 5

7       B.     Plaintiffs' Experiences Are Similar ...................................... 7

8       C.     Plaintiffs Suffered Damages ................................................. 8

9    III.    THE COMPLAINT EXCEEDS THE PLEADING STANDARD ................. 9

10       A.     Rule 8 Applies To All of Plaintiffs' Claims ........................ 9

11
        B.     Plaintiffs' Allegations Satisfy Rule 9, Even Though It Does Not
               Apply .................................................................................. 10

12       C.     Plaintiffs State a Claim for Breach of Contract .................. 11

13
             1.     The TPP Contract Expressly Promises A Permanent Loan

14
                     Modification Agreement ........................................ 12

15
              2.     The TPP Contract's Terms Are Definite, Unambiguous,
                     and Follow an Established Modification Formula. ........ 13

16             3.     Plaintiffs Provided Consideration For the TPP Contract. ........ 14

17             4.     Plaintiffs Suffered Contractual Damages ................................ 16

18       D.     Plaintiffs State A Claim For Breach of the Deed of Trust ................. 16

19
        E.     Plaintiffs State a Claim for Breach of Implied Covenant of

20
               Good Faith and Fair Dealing ............................................... 18

21
              1.     Citi Breached the Implied Covenant Under California
                     Law. .................................................................... 18

22              2.     Citi Breached the Implied Covenant Under Florida Law ......... 20

23       F.     Plaintiffs State a Claim for Promissory Estoppel ............... 20

24
        G.     Plaintiffs State A Claim Under California's Rosenthal Fair Debt

25
               Collections Practices Act ("RFDCPA") ............................. 21

26
        H.     Plaintiff Bernard States A Claim Under the California
               Consumer Credit Reporting Agencies Act ("CCRAA") ..................... 23

27
        I.     Plaintiffs State A Claim Under California's False Advertising

28
               Law ("FAL") ..................................................................... 25

J.    Plaintiffs State A Claim Under California's Unfair Competition
       Law ("UCL") ......................................................................................27

       1.    Citi's business practices are "unlawful" because they are
             premised on violations of other laws.........................................28

       2.    Citi's business practices are "unfair" under both tests for
             "unfairness" ................................................................................28

       3.    Citi's business practices are "fraudulent" because they
             are likely to deceive the reasonable consumer. ......................29

K.    Plaintiffs State A Claim Under Florida's Deceptive and Unfair
       Trade Practices Act ("FDUTPA") .....................................................31

       1.    Citi Adopted the TPP Agreement and Is Bound By Its
             Representations...........................................................................31

       2.    The FDUTPA Applies to Citi as a Banking Subsidiary...........32

       3.    Citi's Conduct Is Unfair and Deceptive Under the
             FDUTPA.......................................................................................34

IV.   CONCLUSION ............................................................................................35

# I.    INTRODUCTION

This case challenges Defendant CitiMortgage, Inc.'s ("Citi" or "Defendant") practice of abusing borrowers already in financial distress by falsely promising to help them stay in their homes, only to wrongly extract as much money as possible from borrowers for as long as possible, and dishonoring its written promise to provide permanent loan modifications.

Notwithstanding Citi's attempt to reframe this case, this case is not about the Home Affordable Modification Program ("HAMP") or its eligibility requirements. This case is about Citi's misuse of HAMP to perpetrate its devastating misconduct that is at the heart of Plaintiffs' claims. Plaintiffs bring this class action – not because they believe reduced payments entitle every borrower to a HAMP modification, as Citi distorts – but because Citi took it upon itself to aggressively market and promise permanent loan modifications, without dedicating the resources to implement and deliver them, all the while stringing borrowers along and squeezing the most payments out of them. Citi's own Trial Period Plan ("TPP Agreement") provides that, "If I am in compliance with this Trial Period Plan [borrower makes the agreed upon reduced payments] and my representations in Section 1 continue to be true in all material respects [borrower provides income documentation], then the Lender *will* provide me with a Home Affordable Modification Agreement." In breach of this express promise, Citi delayed the modification process for months while pocketing borrower payments due under the agreements.   Citi's misconduct has left Plaintiffs in far worse economic circumstances than before, facing massive arrearages, previously undisclosed fees, imminent foreclosure, depleted cash, damaged credit, and fewer options than had they not been misled by Citi's promise of an Affordable Modification Agreement.

In a broader context, Citi victimized Plaintiffs at least twice, and so far, with impunity.  As Citi would like this Court to forget, the global economic crisis and mortgage industry meltdown and corresponding collapse of the employment and

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 1 - | CASE NO.: CV 10-03792 DSF (PLAx) |
| --- | --- | --- |

DOCS\544268v1

housing markets stem largely from the rampant, irresponsible lending and underwriting practices of large financial institutions – chief among them Citi. Between October 2008 and January 2009, Citi made a plea for its survival and received huge cash bailouts of $45 billion through the Treasury's Troubled Asset Relief Program ("TARP"), funded by taxpayers like Plaintiffs and the Class. Citi tied for first place among banks for the amount of TARP funds received. TARP itself was created under the Emergency Economic Stabilization Act, designed, among other things, to "help families keep their homes and to stabilize communities" and to "minimize foreclosures." ¶ 39.[1] Now, having reaped the benefit of the $45 billion bailout, at a time when Plaintiffs and others similarly situated are fighting for their own financial survival, Citi ignores why it received a $45 billion bailout and what it expressly promised homeowners. Instead Citi blames Plaintiffs, stating that their damages "are the result of their own economic circumstances," and similarly, that "it was plaintiffs' own decision not to make full payments that caused [the damaged credit scores]." Mot. 3, 18. Citi is wrong.

Between April 2009 and August 2009, Citi aggressively marketed "affordable" mortgage loan modifications, including but not limited to those available under HAMP. ¶ 3. Citi's "Homeowner Assistance" campaign publicized Citi's purported commitment to "helping our customers facing financial hardship remain in their homes," with options available to lower monthly payments. ¶¶ 61-63. In response to Citi's marketing blitz, thousands of customers requested Citi loan modifications. ¶ 64.

Citi offered Plaintiffs a trial modification, and promised that if they supplied the required documentation and made timely trial period payments, Citi would permanently modify their loans. Plaintiffs fulfilled their end of the bargain. Each: (1) submitted (and often re-submitted) the requested documentation to Citi; (2)

---

[1] All "¶" references and exhibits are to the Complaint, unless otherwise noted.

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 2 - | CASE NO.: CV 10-03792 DSF (PLAx) |
| --- | --- | --- |

DOCS\544268v1

accepted a Home Affordable Modification Agreement or received confirmation that Citi would accept reduced payments, and (3) made the agreed-upon payments during the "trial period" while waiting for Citi to finalize the promised loan modification.

Citi did not deliver on its promises and took advantage of the borrowers. Among other problems, Citi failed to allocate resources to timely and accurately process the huge volume of loan modification requests solicited by its "Hardship Assistance" PR campaign.  In fact, on August 25, 2009, Citi's parent company, Citigroup, issued a press release admitting that it had "solicited" borrowers to apply for loan modifications but that the efforts had proved "unexpectedly challenging to put in place" due to the "high volume" response to the bank's solicitations.  As a result, Citi continues to systematically botch the process in multiple ways, including:

- Extending the 90-day "trial" modification period by several months or more, with either no capability or no intent to make modifications permanent, as promised;

- Improperly reporting borrowers who made their payments to credit reporting agencies as "delinquent," despite Citi's agreement to accept reduced payments from borrowers during the trial period, and even if borrowers were current on their loan;

- Demanding borrowers send in duplicative documentation because Citi could not keep track of borrowers' records;

- Failing to inform borrowers in writing whether their permanent modification requests were approved or denied; and

- Demanding borrowers make immediate balloon payments of thousands or tens of thousands of dollars, tacking on bogus "inspection" and other fees, and threatening borrowers with foreclosure if they fail to comply.

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 3 - | CASE NO.: CV 10-03792 DSF (PLAx) |
|---|---|---|

1   What was "challenging" for Citi has proven financially devastating for
2   borrowers who believed Citi's promise of permanent modifications and complied
3   with their end of the bargain, only to emerge from the process without their loans
4   modified and in a far worse position than before they responded to Citi's
5   solicitation.  Citi now asks this Court to let lay borrowers bear the cost of Citi's
6   unpreparedness, delay, and incompetence in the loan modification process.  As
7   discussed below, application of the correct standard -- Rule 8 -- avoids this unjust
8   result.  Contrary to Citi's contention, the Complaint is not subject to Rule 9's
9   heightened pleading standard for fraud because fraud is not alleged.  Nevertheless,
10  Plaintiffs' specific allegations surpass that standard.

11  In moving to dismiss, Citi's strategy is to deflect attention from its failures,
12  spin Plaintiffs' claims into legal theories not at issue here, and assert arguments
13  plainly at odds with its own dispositive documents and controlling authority.
14  Contrary to Citi's position that Plaintiffs attempt to enforce HAMP guidelines,
15  Plaintiffs seek to enforce the state's statutory and common laws designed to protect
16  consumers from Citi's deceptive and unfair business practices.

17  Citi's primary defense is that it made no promises and "the relevant
18  documents" prove Citi had no obligation to provide permanent modifications even
19  if Plaintiffs made the reduced payments.  Mot. 2-3.  However, neither the
20  documents, HAMP nor any of the authorities Citi cites permit Citi to do what
21  Plaintiffs allege, which is to induce borrowers to make payments with the promise
22  of permanent modifications and then deliberately and in bad faith deny borrowers
23  the very modifications Citi used to entice and ensnare them.  Citi likewise contends
24  it can inspect properties and charge whatever fees it sees fit, when in fact, Citi's
25  own Deeds of Trust limits its conduct to that which is reasonable to protect its
26  property interests.

27  Citi stretches the bounds of reason in suggesting that the use of a
28  government loan modification form is a license to break promises, mislead

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS   - 4 -   CASE NO.: CV 10-03792 DSF (PLAx)

DOCS\544268v1

borrowers, and generally bungle its modification programs.  Citi also denies that its representations and promises were deceptive, which aside from being untrue, is a factual issue inappropriate for motion to dismiss.[2]

Citi also denies its debt collection practices are subject to the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), which prohibits debt collectors from engaging in the kind of unfair or deceptive acts or practices alleged here.  Citi's reliance on cases that exempt *foreclosure* activities is misguided because foreclosure activity is not consider "debt collection" under the RFDCPA.  Citi further denies any credit reporting violations on the grounds that borrowers reported as "delinquent" were technically delinquent on their original mortgage agreement.   However, under the Consumer Credit Reporting Agencies Act ("CCRAA"), Citi's practice of reporting delinquent borrowers while omitting that Citi *agreed* to and accepted lower payments under a modification plan is misleading and inaccurate, because it does not provide a complete picture of the borrowers' performance of continued payments.

For these and other reasons, Citi's Motion should be denied.

## II.   STATEMENT OF FACTS

### A.   Citi Breached its Agreement To Deliver The Affordable Loan Modifications It Advertised and Promised

Citi aggressively marketed loan modifications to its customers and boasted of its participation in and compliance with HAMP.   ¶¶ 7, 64.  For example, in widely disseminated mailers, Citi represented that "The Making Home Affordable Program was created to help millions of homeowners refinance or modify their mortgages.  As part of this program, we – your mortgage servicer – and the Federal Government are working to offer you options to stay in your home."  Ex. F.

---

[2] Plaintiffs do not, as Defendant argues, claim that HAMP provides a private right of action, nor do Plaintiffs make claims as a third-party beneficiary under Citi's Servicer Participation Agreement ("SPA") with the Treasury.  Mot. 11.

Citi's publicity campaign was successful, prompting thousands of borrowers to contact Citi to request loan modifications.  In fact, since HAMP started in early 2009, the Treasury Service Performance Reports estimate that hundreds of thousands of Citi borrowers were potentially eligible for loan modification.  ¶ 64.

In contrast, Citi's actual participation in HAMP and related modification efforts are categorical failures.  As of August 31, 2010, Citi initiated only 150, 568 HAMP trials, with only 10,400 active trial modifications, and resulting in only 49,538 permanent loan modifications.  ¶ 65.  These numbers reflect Citi's failure to prioritize and process loan modifications in a timely and accurate manner, as borne out by Plaintiffs' experiences. ¶¶ 66-154.   Citi voluntarily and independently entered into uniform, written contracts with borrowers to provide HAMP loan modifications.  Exs. A, B, D, and E.  These written contracts, known as Trial Period Plan Agreements expressly promise:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender **will** provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

*Id.* (emphasis added).

Aside from outright failing to perform its promise to permanently modify loans after subjecting borrowers to extended trial periods, Citi did not staff an adequate number of trained and supervised personnel to process the large volume of loan modification requests it received.   ¶¶ 7, 67.   These poorly equipped personnel often: (1) improperly denied modification requests, (2) placed borrowers in other "assistance" programs that did not modify the loan terms to make payments more affordable, but merely changed the payment schedule with a balloon payment at the end, and/or (3) offered borrowers worse terms than those

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 6 - | CASE NO.: CV 10-03792 DSF (PLAx) |
|---|---|---|
| DOCS\544268v1 | | |

1    for which they qualified.  ¶ 7.  Citi also misreported borrowers as "delinquent" to

2    credit reporting agencies, even if they were current on payments when they entered

3    the TPP agreements and made reduced payments per Citi's instructions.  ¶¶ 6, 76.

4    Then, after collecting a steady flow of cash from borrowers during the trial period,

5    Citi abruptly denied modifications and demanded immediate balloon payments for

6    thousands of dollars, and other undisclosed fees, leaving borrowers in huge arrears,

7    at risk of foreclosure, with damaged credit, and without the other options they once

8    had, including refinancing. ¶¶ 72, 74-75, 77.

9         **B.**    **Plaintiffs' Experiences Are Similar**

10        Plaintiffs contacted Citi and inquired about a permanent loan modification

11    that would help them make lower, affordable payments.  ¶¶ 80, 90, 109, 127, 139.

12    Plaintiffs then complied with Citi's requests for documentation – including repeat

13    requests for the same documentation – and typically signed a TPP Agreement.[3]  ¶¶

14    95, 113, 128, 142.  Citi then agreed to and instructed Plaintiffs to make reduced

15    payments, and Plaintiffs did so, even beyond the 90-day trial period per Citi's

16    additional instructions.  ¶¶ 84, 86, 91, 95, 98, 113, 116, 128, 131, 142, 145, 149.

17    After a period of collecting reduced payments, Citi abruptly sent Plaintiffs King,

18    Glennon, Bernard, Chui, and Verdini demands for immediate payment of

19    thousands of dollars, which included purported arrearages, delinquency expenses,

20    and other unknown and/or unnecessary fees, and threatened them with foreclosure.

21    ¶¶ 87, 101, 119.  Citi also pressured Plaintiffs Daniel and the Betancourts to enter

22    into Citi's in-house, non-HAMP loan modifications on less favorable terms.

23    ¶¶ 134-36, 149-50.   And despite Citi's explicit agreement to accept reduced

24    payments, Citi reported Plaintiffs as delinquent to credit reporting agencies and

25    damaged their credit.  ¶¶ 89, 107, 125, 137, 154.

26

27    [3] Plaintiffs King and Glennon were not sent a TPP agreement.  Rather, they received
confirmation of their "repayment plan" which, like the TPP agreements, instructed them
28    to make reduced payments.  ¶¶ 82-85.

### C.    Plaintiffs Suffered Damages

As a result of Citi's misconduct, Citi claims Plaintiffs now owe Citi *more* after completing their trial periods than when they started, and face immediate demands for balloon payments of arrears and miscellaneous fees.  Citi adds the difference between the Trial Period payments and the regular payments to the unpaid mortgage balance.  Consequently, borrowers who were current when they applied for a modification, went into default for the first time.  ¶¶ 8, 9, 72, 78.  This increased debt causes further hardship, including making a sale of the house or payment of arrears and other options more difficult.  ¶¶ 72, 79.  Plaintiffs suffer additional derogatory credit reporting as a result of the extended TPP.[4]  ¶ 76.  And by extending the time Plaintiffs are in default under the original loan agreement, Citi gives itself another excuse to impose additional late charges and foreclosure related fees.  ¶¶ 75, 77.

Citi ignores Plaintiffs' damages allegations – and the applicable standard of review – and factually disputes whether Plaintiffs suffered damages or whether Citi caused their injury.  Citi also asks the Court to construe the allegations against Plaintiffs, for example, Citi speculates that circumstances might have led to Plaintiffs' increased costs even absent a TPP agreement.  Such nonsense outside the Complaint is improper on a motion to dismiss.

---

[4] Citi asserts that courts generally find that damages to credit reports do not constitute harm to state a claim, but in fact, it simply points to cases where the allegations of harm were, in fact, vague. Mot. 18.  In *Arellano v. American Home Mortgage*, No. C 09-05103 JSW, 2010 WL 2300986, at *2 (N.D. Cal. June 4, 2010) (plaintiff alleged that he "could have" taken action to correct a credit report sooner, but here Plaintiffs specifically describe and allege Citi's monthly derogatory credit reporting practices); In *Kariguddaiah v. Wells Fargo*, No. C 09-5716 MHP, 2010 WL 2650492, at *7 (N.D. Cal. July 1, 2010) (unlike here where Plaintiff alleged the specific decrease in her credit report, the plaintiff only made conclusory and allegations that she suffered harm by making increased payments on other loans).

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 8 - | CASE NO.: CV 10-03792 DSF (PLAx) |
|---|---|---|

DOCS\544268v1

## III.   THE COMPLAINT EXCEEDS THE PLEADING STANDARD

### A.   Rule 8 Applies To All of Plaintiffs' Claims

Rule 8 is the governing pleading standard for Plaintiffs' claims.  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific facts are not necessary.  The statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197; 167 L. Ed. 2d 1081 (2007) (citations omitted).

Citi erroneously contends that Rule 9's heightened pleading standard applies to Plaintiffs' RFDCPA, FDUTPA, FAL and UCL claims.  However, Rule 9 cannot apply because: (a) Plaintiffs do not allege fraud; (b) none of their claims require proof of fraud; and (c) none of the facts alleged in the complaint "necessarily constitute[s] fraud."  *In re Mattel, Inc. Toy Lead Prods. Liability Litig.*, 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008).  As this Court noted in Mattel – and contrary to Citi's position – Rule 9 does not apply to all claims involving "false representations" or "fraudulent" conduct.  Rather, Rule 9 only applies to specific allegations of fraud, such as allegations of intent to deceive, an overarching fraudulent scheme, or other conduct that necessarily constitutes fraud.  *Id.*  Here, as in *Mattel*, Rule 9 does not apply because Plaintiffs make no such allegations.  *See id.*[5]

---

[5] Citi's cases are distinguishable.  Plaintiff in *Vess* alleged that three defendants participated in a fraudulent conspiracy to illegally increase sales of Ritalin.  *Vess*, 317 F.3d at 1100.  Plaintiff alleged that one defendant made financial contributions to the other two, who then altered medical diagnostic criteria in a manner designed to increase the number ADHD diagnoses and artificially expand the market for Ritalin.  *Id.* at 1101.  This case does not involve that type of wide-ranging fraudulent scheme.  *Gonzales v. First Franklin Loan Servs.*, 2010 WL 144862, at *7 (E.D. Cal. Jan. 11, 2010), relied on the mistaken premise – rejected in *Mattel* – that Rule 9 applied to an RFDCPA claim simply "because Plaintiff's allegations involve false representations . . . ."  Finally, in *Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc.*, 2010 WL 282195, at *10 (M.D. Fla. July 16, 2010), plaintiff pled a common law claim for fraudulent inducement along with his FDUTPA claim – and relied on the same conduct for both.  That is not the case here.

### B. Plaintiffs' Allegations Satisfy Rule 9, Even Though It Does Not Apply

Even if Plaintiffs' claims include allegations of fraud (they do not), Rule 9 applies only to those specific allegations of "fraud," and not to the claims as a whole. *Vess*, 317 F.3d at 1104.[6]  In any case, the Complaint alleges the "who, what, when, where and why" of each allegation that can arguably be (mis)characterized as an averment of fraud.  Accordingly, Plaintiffs' allegations satisfy both Rule 8 and Rule 9, as exemplified below:

__WHO__: Citi is responsible for the misconduct detailed in the Complaint.  ¶¶ 61-79.  The identities of the specific person(s) in charge of this conduct are in Citi's exclusive control until discovery.

__WHAT:__

- Citi represented it will comply with HAMP and help borrowers keep their homes (¶¶ 3, 63-64);

- Citi promised to permanently modify loans if borrowers make timely trial period payments and submit the required income documentation (¶¶ 4, 54, 56, 64, 111-12, 128);

- Citi represented that once borrowers enter a trial period, they will receive a modification determination in 90 days (¶¶ 4, 5, 54-56, 64, Exhs. B, D);

- Citi failed to employ proper resources and staff (¶¶ 7, 67), made repeated demands for documents already provided (¶68, 117, 133), and otherwise avoided and/or delayed an answer on borrowers' eligibility (¶ 66, 71); and

---

[6] Plaintiffs allege patently non-fraudulent conduct, including Citi's general lack of preparedness, failure to maintain adequate resources and personnel, "erroneous[]" denial of modifications to qualified borrowers, "slow processing" times, and charging unnecessary fees .  ¶¶7-8, 66, 69, 75.  These allegations speak to Citi's incompetence, rather than any intent to deceive.

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 10 - | CASE NO.: CV 10-03792 DSF (PLAx) |
| --- | --- | --- |

DOCS\544268v1

- Citi reported false and/or incomplete information to credit reporting agencies (¶¶ 58, 70, 76, 125, 137).

**WHERE**:  Citi made its representations and omissions on its website, through its TPP agreements and notice letters, and via customer service representatives.  ¶¶ 62-64, 68, 70, 74, 76, 82-85, 91-94, 110-12, 116, 128, 131, 134-35, 140-41, 145-52.

**WHEN**:  Citi's misconduct has been ongoing since April 2009, and includes the dates on which Plaintiffs received their TPP agreements or repayment plan confirmations.  ¶ 45, 84, 91, 110, 128, 140.

**WHY**:  Citi's representations were false and/or misleading because they led borrowers to believe that they would receive permanent loan modifications as long as they made their timely trial period payments and submitted the required income documentation.  ¶¶ 3-5, 54-56, 64, 111, 112, 128.  Citi extended the trial periods far beyond the 90-day time frame it represented to Plaintiffs (¶¶ 66, 71), and told borrowers to continue making reduced payments after that 90-day period, which misled borrowers to believe Citi would still offer them a permanent loan modification.  ¶¶ 116, 131.  Citi's misleadingly reported borrowers as "delinquent" without disclosing that Citi agreed to accept reduced payments.  ¶¶ 76, 204-07.  Citi did not help borrowers keep their homes, but threatened them with foreclosures and demanded thousands of dollars for balloon or reinstatement payments.  ¶¶ 74, 119, 134.  Citi's conduct prevented borrowers from seeking other avenues of relief, such as alternative loan modifications, short sales, or renting.  ¶¶ 72, 74, 79.

## C.  Plaintiffs State a Claim for Breach of Contract

Plaintiffs plead a breach of contract claim, which requires: (1) the existence of a contract (¶¶ 84, 92-93, 113, 128, 140-42, 166-68); (2) Plaintiffs' performance or excuse for non-performance (¶¶ 5, 86, 95-96, 113-14, 128-29, 142, 143, 169, 173); (3) Defendants' breach of the contract (¶¶ 71, 77, 88, 97, 115, 130, 144, 170-

72); and (4) resulting damages (¶¶ 8, 72, 73, 75-77, 79, 174).  *See Armstrong Petroleum Corp. v. Tri Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 (2004).  Citi does not and cannot dispute that Plaintiffs plead each element.[7]  Instead, Citi urges the Court to ignore Rule 12(b)(6) standards, decide factual disputes, and adopt non-precedential and inapposite cases.

### 1.    The TPP Contract Expressly Promises A Permanent Loan Modification Agreement.

Since Plaintiffs fulfilled their obligations under the TPP agreements, Citi must permanently modify Plaintiffs' loans as expressly promised in the TPP agreements.  ¶¶ 5, 7, 65, 66, 166; Ex. B, p.55.  Unable to escape the TPP's express promise and Plaintiffs' allegations, which the Court must accept as true, Citi resorts to relying on the "cover letter" enclosing the TPPs and strains to argue that "the TPPs make it clear that Citi had not yet decided whether plaintiffs qualified under HAMP.  The cover letter enclosing the TPPs stated that plaintiffs' loans would be modified only '[i]f you qualify under [HAMP] *and* comply with the terms of the [TPP].'"  Mot. 15.  Notably, Citi does not cite to the TPP itself because no TPP provisions support Citi's position.  Also, whether Plaintiffs qualify under HAMP is a ***factual*** question, not a legal basis for dismissing the Complaint.

Citi's cases are readily distinguishable.  Mot. 14.  In *Schnelke v. JP Morgan Chase Bank*, 2010 WL 2546100, at *3 (E.D. Cal. June 23, 2010), plaintiff "failed to allege where in his mortgage loan contract, or any contract, a promise about to modify . . . were explicitly made verbally or in writing . . . ."  In contrast, Plaintiffs identify the exact language in the TPP agreements that reflect Citi's

---

[7] Contrary to Citi's contention, Contract formation does not require the offeror's signature on the offeree's acceptance. Restatement (Second) Contracts § 50 (1981). Citi's proposition would lead to absurd results (*e.g.*, a party could claim a contract does not exist months or years after offer, acceptance, and performance).  Additionally, that Plaintiffs King and Glennon did not sign the modification agreement ignores the well-established rule that offers can be accepted by performance, as alleged here.  ¶¶ 85-86. Restatement, *supra*, at § 50; *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 829-30 (2007) (acceptance by performance creates binding contract).

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 12 - | CASE NO.: CV 10-03792 DSF (PLAx) |
|---|---|---|

promise. *See* Exs. A-B, D-E. *St. James v. JP Morgan Chase Bank*, 2010 WL 3703315 (S.D. Cal. Sept. 15, 2010), is not a Rule 12(b)(6) case, and is even less helpful. There, the court denied a TRO because the *pro per* plaintiff did not demonstrate a likelihood of success on his bad faith breach of contract claims, which were based on time-barred duties purportedly owed under TILA. *Id.* at *2.

### 2. The TPP Contract's Terms Are Definite, Unambiguous, and Follow an Established Modification Formula.

As discussed above, the TPP expressly and unambiguously promises to permanently modify Plaintiffs' loans if they fulfill the TPP's conditions, leaving nothing for the parties to negotiate. There is nothing indefinite, vague, or unclear in the contract. *Durmic v. JP Morgan Chase Bank, N.A.*, No. 10-CV-10380-RGS, 2010 WL 4825632, at *4 (D. Mass. Nov. 24, 2010).

Under California law, "neither law nor equity requires that every term and condition of an agreement be set forth in the contract." *Elite Show Servs., Inc. v. Staffpro, Inc.*, 119 Cal. App. 4th 263, 268 (2004). A contract is sufficiently definite if a court can "ascertain the parties' obligations" and "determine whether those obligations have been performed or breached." *Id.* at 268. Court may infer unexpressed provisions of a contract from the writing or from external facts. *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 482 (1955); *Robinson & Wilson, Inc. v. Stone*, 35 Cal. App. 3d 396, 409-10 (1973). Terms "subject to objective determination" are certain enough to enforce. *Carver v. Teitsworth*, 1 Cal. App. 4th 845, 853 (1991).[8]

---

[8] The TPP's shorthand reference to a "Home Affordable Modification Agreement" does not transform Plaintiffs' state law claims for breach of contract into a private right of action under HAMP. HAMP informs and provides the context for the terms of agreement between parties, and it is black letter law that the Court is free to look to extrinsic sources to define contract terms.

1    Here, the TPP promises to give a loan modification under a pre-determined
2 HAMP formula.[9]    The TPP's reference to "Home Affordable Modification
3 Agreement" is not generic, but has a technical meaning set forth in the HAMP
4 Program Documentation.  HAMP rules provide a detailed method for determining
5 the terms of a Home Affordable Modification Agreement.  This determination is a
6 matter of arithmetic under the HAMP formula, not renegotiation, and is consistent
7 with an intent to be bound.  In fact, Citi is required to arrive at those terms even
8 before it offers Plaintiffs a TPP Contract.  SD 09-01 at 19, 20, 29, 33-35.

9    The cases Citi cites do not support an absolute rule that a contract to provide
10 a modification cannot be enforced without certain essential terms.   Mot. 16.
11 Unlike this case, *Lewis v. American Savings & Loan Association*, No. 89-15556,
12 1990 WL 89353 (9th Cir. June 29, 1990), and *University Creek Associates II, Ltd.*
13 *v. Boston American Financial Group*, 100 F. Supp. 2d 1337, 1340 (S.D. Fla.
14 1998), do not involve loan agreements whose terms are set according to a uniform
15 protocol.  The Home Affordable Modification Agreements here differ from the
16 individual negotiations for one-time loans at issue there.  Citi's cases do not
17 involve written agreements, and do not discuss terms like interest rate, payment
18 schedule, or maturity dates.  Here, however, Citi promised loan modifications
19 under a uniform pre-determined protocol as long as Plaintiffs complied with their
20 contractual obligations.

### 3.    Plaintiffs Provided Consideration For the TPP Contract.

21
22
23    Notwithstanding a pre-existing legal duty to make mortgage payments,
consideration under California law is sufficient if the performance due under the
24 contract "differs in any way" from the pre-existing legal duty.  *House v. Lala*, 214
25

26 [9] Citi is directed to use a "Standard Modification Waterfall" for setting loan terms, which
clearly dictate the terms of the permanent loan modification.  ¶¶ 51-53, 58-60.  That
27 "waterfall" – a combination decision tree and underwriting process – sets the new loan
balance, interest rate, maturity date, amount of any principal forbearance or forgiveness,
28 and other loan terms.  *Id.*

1    Cal. App. 2d 238, 243 (1963).   In addition to the trial period payments, the
2    Complaint details other substantial consideration which was not required by law or
3    contract before the TPP, and which constituted a detriment to Plaintiffs, a benefit
4    to Citi, or both.   *See Asmus v. Pac. Bell*, 23 Cal. 4th 1, 31-32 (2000)
5    ("Consideration may be either a benefit conferred upon the promisor or a detriment
6    suffered by the promisee.").

7         Plaintiffs provide substantial new consideration under the TPP agreements.
8    First, Plaintiffs must make escrow payments to Citi for property taxes and
9    insurance as a condition of entering into the TPPs.  ¶ 105; Exs. A-B, D-E, ¶ 4(C).
10   This benefits Citi by reducing the risk of default on tax obligations and increases
11   the value of Citi's security interest.   *See Durmic*, 2010 WL 4825632, at *3.
12   Second, Plaintiffs agree to undergo credit counseling if Citi requires them to,
13   which benefits Citi by reducing the risk of default.  *See id.*; Exs. A-B, D-E, ¶ 1(F).
14   Third, Plaintiffs suffer derogatory credit reporting during the trial period.  ¶¶ 69,
15   76.  Fourth, the TPP agreements impose burdensome documentation requirements
16   on Plaintiffs.  ¶¶ 68, 100, 117, 147.  This expenditure of time and energy alone is
17   sufficient consideration.  *See Raedeke v. Gibraltar Sav. & Loan Ass'n*, 10 Cal. 3d
18   665, 672-74 (1974); *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1039
19   (2010).  Lastly, Plaintiffs' provision of detailed financial information benefits Citi
20   because it allows Citi to predict Plaintiffs' ability to pay with more certainty.
21   *Durmic*, 2010 WL 4825632, at *3.[10]

22        Furthermore, Citi's consideration argument proves too much:  if the
23   Plaintiffs' full performance of the TPP requirements is insufficient to make the TPP
24   contracts enforceable, it is insufficient to make a permanent modification
25
26
27   _____
     [10] Citi offered TPP agreements knowing Plaintiffs would be stuck in extended trial
     periods, which financially benefit Citi with more servicing and foreclosure-related fees.
28   ¶¶ 7, 73-77, 216(g), 224(b).

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 15 - | CASE NO.: CV 10-03792 DSF (PLAx) |
|---|---|---|
| DOCS\544268v1 | | |

1  agreement enforceable as well — and Citi could unilaterally disavow permanent
2  mortgage modifications years after the fact.

3  ### 4.  Plaintiffs Suffered Contractual Damages

4  Plaintiffs need only allege that damages would not have occurred but for
5  Citi's breach.[11]  The *Swahn Group Inc. v. Segal*, 183 Cal. App. 831, 851-52 (2010).
6  The Complaint meets this standard.  ¶¶ 8, 9, 72-79, 174.  *See above*, Part II.C.

7  Citi's challenges against the individual Plaintiffs do not withstand scrutiny.
8  The Betancourts complied with the TPP, despite Citi's contrary implications.  Mot.
9  19.  They timely made all of their payments and fully complied with the TPP.
10  ¶¶ 142-44.  Altogether, the Betancourts made seven trial period payments.  ¶ 146.
11  After Citi notified the Betancourts that their permanent modification paperwork
12  was on its way, they informed Citi that they would resume payments after
13  receiving it.   ¶ 146.   This is not a breach of the TPP agreement, which
14  contemplates only three payments.   ¶¶ 4, 71.   Similarly, contrary to Citi's
15  suggestion that King-Glennon did not make the required payments (Mot. 19),
16  "King and Glennon timely submitted each of the modified payments as required
17  under their agreement with Defendant."  ¶ 86.

18  ### D.  Plaintiffs State A Claim For Breach of the Deed of Trust

19  Citi breached the Deed of Trust ("Deed") by charging Plaintiffs unnecessary
20  and unreasonable inspection fees.   Section 7 of the Deed authorizes only
21  reasonable inspections of the property: "Lender or its agent may make ***reasonable***
22  entries upon and ***inspections*** of the Property.  If it has reasonable cause, Lender
23  may inspect the interior of the improvements on the Property."  Rich Decl., Ex. A
24  at ¶ 7 (emphasis added).[12]

---

25  [11] Plaintiffs' damages is discussed above in Part II.C.

26  [12] Contrary to Citi's interpretation that "Section 7 limits only more-intrusive inspections
27  that require 'entries upon' plaintiffs' land," (Mot. 20), Section 7 expressly limits both
    entries upon *and* inspections of the property to be reasonable.  Citi's non-binding
28  authority is inapposite.  *See, e.g., Mann v. Chase Manhattan Mort.*, 2002 WL 32157416,
    at *4 (D.R.I. Mar. 7, 2002) (addressing lack of prior notice of inspection, not

In practice, Citi ordered multiple and unnecessary inspections and charged Plaintiffs repeated inspection fees, even though the first inspection revealed Plaintiffs' properties were occupied and in good condition (and therefore, Citi's interests were well protected).   ¶ 179.   Indeed, the work orders for Citi's inspections are computer-generated and provide no meaningful information to Citi, and the associated fees are assessed as a matter of course.  ¶ 178.

Citi's insistence that it can take whatever action it deems necessary when the borrower defaults is wrong.  Mot. at 20.  First, Plaintiffs are not in default; they made timely, albeit reduced monthly payments as modified by Citi in the TPP agreement.[13]  Second, *Walker v. Countrywide Home Loans*, 98 Cal. App. 4th 1158, 1168-69 (2002), upon which Citi primarily relies, is distinguishable, because the court affirmed summary judgment after discovery and a full evidentiary record. Also, the *Walker* plaintiffs challenged inspection fees under statutes not at issue here and claimed such fees against defaulted borrowers were actually a "late fee." *Id.* at 1171-74.[14]  Plaintiffs' claims are similar to those in *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1025 (S.D. Iowa 2009), which were upheld on a motion to dismiss.

---

reasonableness of fees*); Ladd v. EquiCredit Corp.*, 2001 WL 1339007 *1 (E.D. La. Oct. 30, 2001) (same).

[13]In California, a subsequent written contract alters the terms of a previous contract. *See Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1060, 1064 (S.D. Cal. 1999)(citing Cal. Civ. Code § 1698).  Even a partial modification "supersedes those terms to which it relates." *Id.* (citing *Han v. Mobil Oil Corp.*, 73 F.3d 872, 876 (9th Cir.1995)). The TPP operates as a partial modification to the initial payment plan under Cal.Civ.Code § 1698.  *Secrest v. Security Nat. Mortg. Loan Trust 2002-2*, 167 Cal. App.4th 544, 553 (2008) (forbearance agreement contractually modified monthly mortgage payments).

[14] *Majchrowski v. Norwest Mortg.*, 6 F. Supp. 2d 946, 964-66 (N.D. Ill. 1998), another summary judgment case, is distinguishable.  First, unlike here, the *Majchrowski* plaintiffs simply defaulted, went into foreclosure and did not enter into TPP agreements.  Further, the contract clause in *Majchrowski* was extremely broad and permitted the servicer to "do and pay for whatever is necessary[.]" *Id.* at 964-65.  In contrast here, the contract clause only permits Citi to "do and pay for whatever is *reasonable or appropriate*[.]"  Rich Decl., Exh. A at ¶ 9.  Finally, the *Majchrowski* plaintiffs did not challenge the reasonableness of the inspection fees, as Plaintiffs do here, but argued that they were unauthorized under the contract and that the servicer failed to give notice of the inspections.  *Id.* at 966-67.

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 17 - | CASE NO.: CV 10-03792 DSF (PLAx) |
| --- | --- | --- |

DOCS\544268v1

Citi's reliance on Sections 9 and 14 of the Deed is also misplaced.  Even if Plaintiffs were in default, which they are not, Section 9, consistent with Section 7, simply allows Citi to take "reasonable or appropriate" action to protect its property interests.   Rich Decl. Ex. A at ¶ 9.   While Section 14 generally authorizes inspection fees, Citi's conduct remains subject to Sections 7 and 9's reasonableness standards.  The Deed does not permit Citi's scheme of recurring and computerized monthly inspections where the borrower occupies the dwelling and makes timely payments under a TPP pursuant to Citi's instructions.

Contrary to Citi's mischaracterization of Plaintiffs' claim, Plaintiffs challenge whether Citi's inspection fees are reasonable and reasonably incurred (which cannot be resolved on a motion to dismiss), not whether the Deed gives Citi authority to charge such fees.  ¶¶ 178-80.  *See Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 868 (9th Cir. 2010); *Buick v. World Sav. Bank*, 565 F. Supp. 2d 1152, 1158 (E.D. Cal. 2008); *Young*, 671 F. Supp. 2d at 1025 ("whether the fees were reasonable . . . is a factual issue that cannot be addressed until the Court is presented with an evidentiary record").

Finally, while vigorously protesting it is not required to abide by HAMP, Citi nevertheless tries to justify its unnecessary, pro forma inspection fees by arguing that "HAMP itself contemplates ongoing inspections."  Mot. 20.  HAMP Directive 09-01, however, merely states: "The property securing the mortgage loan must not be vacant or condemned."   Plaintiffs' claim is premised on a breach Section 7 of the Deed, not HAMP.  Nothing allows Citi to breach the Deed by collecting unreasonable inspection fees.

### E.   Plaintiffs State a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing

#### 1.   Citi Breached the Implied Covenant Under California Law.

The implied covenant of good faith and fair dealing implicit in the TPP agreements imposes on Citi a duty to refrain from "unfairly frustrating the other

party's right to receive the benefits of the agreement actually made." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 413 (2007).  It also imposes "the duty to do everything that the contract presupposes that [Citi] will do to accomplish its purpose." *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960).[15]

The Restatement of Contracts list examples of breach of the implied covenant, including:

> [E]vasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

Restatement, *supra*, note 7, at § 205 Comment (d).

The Complaint's allegations comply with these examples.  For example, Citi interfered with, failed to cooperate, and acted in bad faith under the TPP agreements by inducing borrowers to make continued payments with the promise of permanent modification and then depriving them of the very benefit Citi used to entice them, failing to make a good faith effort to permanently modify loans by not hiring and training adequate staff, by billing borrowers for unreasonable and unnecessary fees, by misrepresenting that trial loan modifications would become permanent, and delaying or neglecting to provide adequate or accurate information to borrowers and credit reporting agencies.  ¶ 187.

Citi mistakenly asserts the covenant is only breached where a specific provision of a contract is violated.  Mot. 21.  *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372-73 (1992).  While the scope of conduct that may breach the covenant is defined by the terms of the contract, "breach of a specific provision of the contract is not a necessary prerequisite." *Id.* at 373.  Nor does Citi's authority support its theory that a breach of covenant claim

---

[15] Plaintiffs agree a valid contract must be pled for an implied covenant claim, which Plaintiffs do, as discussed in Part III.B.

1    only exists where the exact violation is not included as an express term.  Mot. 22;

2    *see also Jackson v. Ocwen Loan Servicing, LLC*, No. 2:10-cv-00711-MCE-GGH,

3    2010 U.S. Dist. LEXIS 93524, at *3 (E.D. Cal. Aug. 20, 2010) (HAMP itself could

4    not form the contractual basis for implied covenant claim).

### 2.    Citi Breached the Implied Covenant Under Florida Law

6

7          Under Florida law, the implied covenant claim also protects the reasonable

     expectations of contracting parties.  *Townhouses of Highland Beach Condo. Ass'n

8    v. QBE Ins. Corp.*, 504 F. Supp. 2d 1307, 1310-11 (S.D. Fla. 2007).  Plaintiffs rely

9    on the same allegations to support the implied covenant claim under Florida as

10   under California law.  *See* Part III.C.1.  And contrary to Citi's misinterpretation, an

11   implied covenant claim is a distinct cause of action under Florida law.  *See, e.g.*,

12   *Arlen House E. Condo. Ass'n v. QBE Ins. (Europe) Ltd.*, No. 07-23199-CIV, 2008

13   WL 4500690, at *2 (S.D. Fla. Sept. 30, 2008) ("a cause of action for breach of the

14   implied warranty of good faith and fair dealing is separate and distinct from bad

15   faith claims").

16

### F.    Plaintiffs State a Claim for Promissory Estoppel

17

18         Plaintiffs reasonably relied on Citi's promise that the trial modification

     would lead to permanent modification, and that their reduced payments would

19   satisfy existing loan obligations.  ¶ 190.  Plaintiffs did so to their detriment,

20   incurring additional debt, inflated fees, and negative credit reporting.  ¶ 194.

21

22         Citi disputes facts and rehashes its contract arguments.  Both approaches

     fail.  Citi asserts that the promise Plaintiffs identify is too vague to support a

23   promissory estoppel claim.  Mot. 23-24.  Citi's promises are detailed above in Part

24   III.B.-C.  Citi also argues that Plaintiffs could not have reasonably relied on a

25   promise of loan modification, which is a question of fact unsuitable for resolution

26   on a motion to dismiss.  *See ING Bank v. Ahn*, No. C09-0995 THE, 2010 U.S. Dist.

27   LEXIS 134406, at *22 (N.D. Cal. Dec. 20, 2010).

28

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 20 - | CASE NO.: CV 10-03792 DSF (PLAx) |
|---|---|---|

DOCS\544268v1

The cases on which Citi relies are inapposite. *Simmons v. Countrywide Home Loans*, No. 09cv1245 JAH(JMA), 2010 WL 2635220, at *1 (S.D. Cal. June 29, 2010) (no promissory estoppel claim addressed in the opinion); *Locke v. Wells Fargo Home Mortg.*, No. 10-60286-Civ., 2010 WL 4941456, at *4 (S.D. Fla. Nov. 30, 2010) (promissory estoppel claim was not definite in a letter sent by lender because Florida law requires that the promise include the specific "terms and time," unlike here where Plaintiffs alleged that the TPP establishes the modified payment and duration of the TPP); *Hart v. Countrywide Home Loans*, No. 09-12088, 2010 WL 3272623, at *3 (E.D. Mich. Aug. 19, 2010) (applying Michigan law and finding that plaintiff did not allege reliance on a promise where defendant had informed plaintiff that she did not qualify for a forbearance).

## G.  Plaintiffs State A Claim Under California's Rosenthal Fair Debt Collections Practices Act ("RFDCPA")

The RFDCPA prohibits debt collectors from "engaging in unfair or deceptive acts or practices" to collect consumer debts. Cal. Civ. Code §§ 1788.1, 1788.17. The California Plaintiffs allege Citi violated this statute by unfairly luring them into making "trial modification" payments with false promises of permanent loan modifications. ¶¶ 1-9, 73-75, 78-79.

Plaintiffs plead specific facts showing Citi is a debt collector within the meaning of the RFDCPA:  Citi sent mortgage bills to Plaintiffs, Plaintiffs made their mortgage payments to Citi, and Citi accepted those payments. ¶¶ 8, 84, 90-91, 96, 98, 112, 114, 116, 128-29, 131, 141, 143, 145. *See* Cal. Civ. Code § 1788.2(c) (defining debt collector); *Reyes v. Wells Fargo Bank, N.A.*, 2011 No. C-10-01667 JCS, 2011 U.S. Dist. LEXIS 2235, at *58 (N.D. Cal. Jan. 3, 2011) (mortgage servicer is a debt collector). The mortgages on Plaintiffs' primary residences are "consumer debt" as defined in the RFDCPA, and numerous cases hold that letters, calls, and other attempts to collect mortgage payments are efforts

to collect "consumer debt" under the RFDCPA.[16] *See, e.g., Reyes*, 2011 U.S. Dist. LEXIS 2235; *Walters v. Fid. Mortg. of Cal.*, No. S-09-3317 FDC/KJM, 2010 U.S. Dist. LEXIS 78531, at *40-41 (E.D. Cal. Aug. 4, 2010); *Azzini v. Countrywide Home Loans*, No. 09cv787 DMS (CAB), 2010 U.S. Dist. LEXIS 24572, at *7 (S.D. Cal. Mar. 15, 2010); *Gumbs v. Litton Loan Servicing*, No. 2:09-cv-01159-GEB-GGH, 2010 WL 1992199, at *5 (E.D. Cal. May 13, 2010); *Ohlendorf v. Am. Home Mortg. Servicing*, No. CIV. S-09-2081 LKK/EFB, 2010 U.S. Dist. LEXIS 31098, at *19-20 (S.D. Cal. Mar. 31, 2010).

Citi's citations to the contrary are fundamentally flawed. Those cases (and Citi) rely on other cases that held **foreclosure** pursuant to a deed of trust is not "debt collection" to conclude that **mortgage debt** is not consumer debt. For example, *Linder v. Aurora Loan Servicing, LLC,* No. 2:09-CV-03490-JAM-KJM, 2010 U.S. Dist. LEXIS 74812, at *10 (E.D. Cal. July 26, 2010) concludes that "courts have declined to regard a residential mortgage loan as a 'debt' under the RFDCPA," but cites only to *Ines v. Countrywide Home Loans, Inc*., No. 08cv1267 WQH (NLS), 2008 U.S. Dist LEXIS 88739, at *7 (S.D. Cal. Nov. 3, 2008) ("foreclosure on Plaintiff's property pursuant to a deed of trust . . . does not fall within the meaning of the RFDCPA"), and *Pittman v. Barclays Capital Real Estate, Inc.*, No. 09 CV 0241 JM (AJB), 2009 WL 1108889, at *3 (S.D. Cal. April 24, 2009) ("foreclosing on a deed of trust does not invoke the statutory protections"). Each of Citi's cases (including *Sipe, Sorenson, and Schnelke)* either relies directly on authorities that erroneously conclude a mortgage is never a consumer debt under the RFDCPA, or relies secondarily on other cases (all decided within a space of months) that make the same error. *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141 (E.D. Cal. 2010); *Sorenson v. Countrywide Home*

---

[16]  "[C]onsumer debt" means "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction," Cal. Civil Code § 1788.2(f).

*Loans, Inc.*, No. 2:09-cv-01943-MCE-KJM, 2010 WL 308794, (E.D. Cal. Jan. 12, 2010); *Schnelke*, 2010 WL 2546100.  Citi's cases ignore the distinction between foreclosure and other debt collection activities, and are thus not on point.[17]

Plaintiffs' allegations give Citi ample notice of what conduct it alleges is unfair and deceptive, satisfying Rule 8.  *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008).  Because Plaintiffs' RFDCPA claim does not allege fraud or require a finding of fraud, Rule 8 applies.  Nevertheless, Plaintiffs' specific allegations survive under either Rule 8 or Rule 9.  *See, e.g.,* ¶¶ 80, 90, 139 (all Plaintiffs "contacted Citi"); ¶¶ 82-85, 87, 91-94, 101, 140-42, 152 (detailing when Citi instructed Plaintiffs to make reduced payments, and when it rejected their mod requests); ¶¶ 82-85, 87, 89, 91-95, 98-101, 103-07, 140-42, 145-54 (detailing the content of each relevant communication they had with Citi, including the substance of their TPP agreement and other correspondence, the substance of various verbal communications with Citi representatives).  *See also* Part II.E, *supra*.

Accordingly, Plaintiffs state a RFDCPA claim under both Rule 8 and 9.

## H.   Plaintiff Bernard States A Claim Under the California Consumer Credit Reporting Agencies Act ("CCRAA")

The CCRAA prohibits any person from "furnish[ing] information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."  Cal. Civ. Code § 1785.25(a).  Bernard states a CCRAA claim based on Citi's practice of falsely reporting loans as delinquent, even though borrowers make timely,

---

[17] The Ninth Circuit defined the term "consumer debt" very clearly.  In *In re Price*, 353 F.3d 1135, 1138-39 (9th Cir. 2004), the court interpreted a portion of the Bankruptcy Code that, like the RFDCPA, defines "consumer debt" as "debt incurred by an individual primarily for a personal, family or household purpose."  *Cf.* 11 U.S.C. § 101(8) *with* Cal. Civ. Code § 1788.2(e)-(f).  The court determined that "there is no question that the secured debt [used to purchase plaintiffs' home] was incurred 'primarily for a personal, family or household purpose' and must be considered 'consumer debt'" under the Bankruptcy Code.  *See also Bush v. Loanstar Mortgagee Servs.*, 286 F. Supp. 2d 1210, 1213 (N.D. Cal. 2003) (mortgage is "clearly" a debt under FDCPA).

agreed upon modified trial period payments.[18]  *See Fisher v. Wells Fargo Bank*, 2009 WL 2772887, at *2 (Cal. App. Sept. 2, 2009) (CCRAA violated where bank submitted delinquent report during forbearance).

Although Citi agreed to accept reduced modified payments from Bernard, Citi reported Plaintiff as delinquent on her mortgage payments to credit agencies – rather than as making timely payments under a modified payment plan.  ¶ 206. Citi's credit reporting practices violates the CCRAA because they tell only half the story, which is insufficient under the CCRAA.  "[A] report violates the [CCRAA] when it is misleading or incomplete, even if it is technically accurate." *Schoendorf v. U.D. Registry, Inc.*, 97 Cal. App. 4th 227, 239 (2002); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (report can be "incomplete or inaccurate" "because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions").  While Bernard's modified payments were not her *prior original* payment, as Citi defends, Citi's reports are misleading and incomplete because Citi agreed to the modified payment so Bernard was technically current and not delinquent. ¶206-07.  Citi's attempt to justify its inaccurate credit reporting ignores its agreement and undermines the very purpose of the CCRAA, which mandates credit reporting procedures to be "reasonable to ensure maximum possible accuracy." *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1081-82 (C.D. Cal. 2006).[19]

As discussed above, Plaintiff suffered actual damages as a result of Citi's conduct, which support the CCRAA claim.[20]  ¶¶ 107, 208.  *See Rubio v. Capital*

---

[18] Plaintiff's CCRAA claim is not predicated on HAMP, as Citi claims.  Mot. 26.  Even so, Citi's violated HAMP's requirements.  Bernard was current on payments when she entered the TPP.  ¶205.  Under HAMP, Citi should have reported her as current, but on a modified payment plan, not as delinquent.  ¶ 58.

[19] Citi's argument fails because it asks this Court to decide the *merits* of the claim. Mot. 27.  Plaintiff Bernard never missed a payment on her modified plan and was current going in.  ¶¶ 96, 102.  At the pleading stage, these facts taken as true, establish this claim.

[20] By ignoring Plaintiff's damage claims for loss of available credit and increased costs of credit, Citi concedes those damages are properly pled under the CCRAA.  Citi only

*One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) (loss of credit constitutes lost money); *Schulken v. Wash. Mut. Bank, N.A.*, 2009 WL 4173525, at *6, 15-16 (N.D. Cal. Nov. 19, 2009) (decreased credit rating and increased costs of credit sufficient to plead damages).

**I.     Plaintiffs State A Claim Under California's False Advertising Law ("FAL")**

The FAL makes it unlawful for any person to knowingly or negligently make any public statement relating to a product or service that is untrue or misleading with the intent to sell a product or service.  Bus. & Prof. Code § 17500.  Thus, "advertising" under the FAL includes virtually any statement — written or oral — made in connection with the sale of a product or service — and widespread dissemination is not necessary.  *See Chern v. Bank of Am.*, 15 Cal. 3d 866, 870, 876 (1976); *People v. Super. Ct.*, 9 Cal. 3d 283, 286, 289 (1973) (statements can be oral); *Ford Dealers Ass'n v. Dep't of Motor Vehicles*, 32 Cal. 3d 347 (1982) (one-on-one solicitations fall within the purview of section 17500).  While Citi attempts to limit the scope of its "advertising" violations to widely disseminated conventional advertisements, the FAL encompasses all of the following:  Citi's mass marketing campaign (¶¶ 61-64, 221-23), misrepresentations in the loan modification agreements (Exs. A-F; ¶¶ 92-95, 140-42, 223), individual solicitations and additional oral and written correspondence by Citi personnel (¶¶ 83-85, 98-99, 103-04, 145-46, 152).

The test for a § 17500 violation is whether the "statement" is likely to deceive a reasonable consumer.  *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (2006).  The FAL prohibits both (a) untrue and misleading statements, and (b) statements that may be accurate on some level.  "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the

challenges only the "plausibility" of those damages.  As discussed above, a decreased credit score is a cognizable harm under the CCRAA.  *See Mot. at 27.*

consumer, such as by failure to disclose other relevant information, is actionable under these sections [Bus. & Prof. Code, §§ 17200 and 17500]." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998).

Citi's untrue and misleading statements were likely to and did deceive consumers to believe, among other things, that: (1) they were pre-screened for trial modifications, (2) Citi complied with HAMP processing guidelines, (3) trial modification payments would last three months and help them avoid foreclosure, and (4) Citi would extend them permanent modifications if they followed Citi's instructions. ¶¶ 221-22, 224. The Complaint also alleges facts, which must be assumed true, showing why Citi's statements were misleading. Among other reasons, Citi failed to screen borrowers accurately before placing them in TPPs, ¶ 66, and did not have enough trained personnel to process the modifications accurately or in time. ¶¶ 66-67, 71. Citi's practice was to demand immediate payment of arrears after denying permanent modifications, which brought borrowers to the brink of foreclosure, even those who were current before they started the modification process. ¶¶ 74, 221-22, 224. As set out above, these allegations are sufficient to satisfy Rule 8 (and 9(b)).[21]

Citi's remaining arguments are improper on a motion to dismiss. Whether Citi's statements, including those on its website that borrowers "may" (not "would") be able to keep their homes and Citi's other fine-print disclosures, were actually misleading is a question of fact, not of law. Mot. 31-32; *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (whether representations are deceptive under the FAL or UCL is question of fact that requires weighing of evidence).

---

[21] The sole case Citi offers to challenge this claim, *Jackson*, 2010 Dist. LEXIS 93524, at *14 is easily distinguished. There, plaintiff failed to make trial payments, the servicer foreclosed, and the complaint failed to state a FAL claim because plaintiff made no allegations to support the conclusory claim that servicer "never intended to provide a loan modification."

Similarly, Citi ignores Plaintiffs' allegations regarding actual injury and detrimental reliance, including representations in the TPPs themselves, or statements made directly to them (¶¶ 83-85, 98-99, 103-04, 145-46, 152, 192-93). *See* Part II.E, *supra*.  Furthermore, under California law, "a presumption, or at least an inference, of reliance arises whenever there is a showing that a misrepresentation was material."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009); *Ford v. Hotwire, Inc.*, No. 07-CV-1312 H (NLS), 2008 U.S. Dist. LEXIS 108584, at *15 (S.D. Cal. Feb 25, 2008) (citing *Vasquez v. Super. Court*, 4 Cal. 3d 800, 814 (1971) (reliance "may be inferred from the circumstances attending the transaction")).   Materiality is determined by an objective standard: "[a] misrepresentation is judged to be material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."  *In re Tobacco II*, 46 Cal. 4th at 327 (quotations omitted).   Citi's misrepresentations are material under this objective standard. Plaintiffs would not have inquired about, or entered into, loan modification agreements, or made the modified payments, absent Citi's misrepresentations.[22] ¶ 236.

### J.   Plaintiffs State A Claim Under California's Unfair Competition Law ("UCL")

"Unfair competition" is defined to include any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [section 17500 et seq.]"  Bus. & Prof. Code § 17200.  Citi's business acts or practices may be prohibited if they are "unfair" *or* "unlawful" *or* "fraudulent," or any combination thereof.  *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 650 (1998).  Plaintiffs allege violations of each of these prongs as independent bases for class-wide relief.

---

[22] Materiality is pled in the complaint and must be accepted as true.  To the extent Citi challenges materiality, it is ultimately a question of fact not suitable for determination on a motion to dismiss.  *In re Tobacco II*, 46 Cal. 4th at 327.

### 1. Citi's business practices are "unlawful" because they are premised on violations of other laws

If the Court upholds any of Plaintiffs' other claims of unlawful conduct, then Plaintiffs' 17200 "unlawful" claim likewise survives. ¶ 232; *Gardner v. Am. Home Mort. Serv., Inc.*, 691 F. Supp. 2d 1192, 1201 (E.D. Cal. 2010) (upholding UCL claim where plaintiff adequately pled RESPA violation).  Again, Rule 8 applies to Plaintiffs' claims under the "unlawful" prong because the underlying claims are subject to Rule 8, not Rule 9.  Even if the Court determines that Rule 9 applies to specific averments of "fraud," Plaintiffs' allegations are sufficiently detailed to meet those heightened pleading requirements.  *See* Part II.E.

### 2. Citi's business practices are "unfair" under both tests for "unfairness"

To state a claim for an "unfair" business act or practice, Plaintiffs must allege facts showing the "unfair" nature of the conduct and allegations sufficient to meet the two tests for unfairness in the consumer context:  (1) whether the harm to the consumer outweighs the utility of the conduct in question, or (2) whether the practice violates a public policy that is tethered to a legislatively declared policy.  *Rubio,* 613 F.3d at 1204-05; *Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718, 738 (9th Cir. 2007).[23]  The Complaint states a claim under either "unfair" test.[24]

Nearly identical claims of unfair and deceptive business practices (and the RFDCPA) were upheld as "unfair" in *Reyes*.  There, the plaintiff completed payments under a forbearance agreement (not a trial modification period), but at the conclusion of the forbearance period, the defendant servicer declined to modify and foreclosed instead.  2011 U.S. Dist. LEXIS 2235, at *8-13.  Plaintiff alleged

---

[23] The FTC test, which very few courts have referenced, has no place in UCL jurisprudence.  *See Overstock.com, Inc. v. Gradient Analytics, Inc.,* 151 Cal. App. 4th 688, 715 (2007).

[24] Citi lumps all of Plaintiffs' UCL allegations into a singular claim of fraud, in an attempt to confuse the Court into applying Rule 9's pleading standard.  Rule 8 applies to claims under the UCL's "unfair" prong, because proof of fraud is not required.  Even if the Court decides to apply Rule 9 to specific allegations, the Complaint meets Rule 9's heightened standard.  *See* Part II.E.

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 28 - | CASE NO.: CV 10-03792 DSF (PLAx) |
| --- | --- | --- |

DOCS\544268v1

Wells Fargo's conduct in inducing him to enter the forbearance agreement was deceptive and unfair, because the cover letter and forbearance agreement appeared to be consistent with HAMP – but were not. *Id.* at *68. Plaintiffs pointed specifically to the following:

> 1) the words "good news" at the beginning of the letter; 2) the language in the letter indicating that the Agreement was being offered based on a review of the recipient's financial information; 3) the statement that foreclosure counsel would be instructed to delay foreclosure proceedings as long as the recipients made timely payments under the Agreement; and 4) the use of the words "trial period" to describe the Agreement.

*Id.* at *63-64. These allegations stated a claim under the UCL's "unlawful" prong, and for misleading debt collection under the RFDCPA.

Citi's unfair practices of failing to timely determine eligibility for permanent modification, and not employing resources to ensure that modification requests are evaluated in an accurate and effective manner, produced great harm to Plaintiffs and other borrowers, and benefited no one (except Citi). *See, e.g.,* ¶¶ 233, 235. Defendant's practice of systematically breaching its contracts with borrowers has also been recognized as an unfair business practice. ¶ 171. *Arce v. Kaiser Found. Health Plan, Inc.*, 181 Cal. App. 4th 471, 489-90 (2010); *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1483 (2005) ("[A] systematic breach of certain types of contracts (*e.g.*, breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL.").

### 3.   Citi's business practices are "fraudulent" because they are likely to deceive the reasonable consumer.

A business practice is "fraudulent" under the UCL if "members of the public are likely to be deceived." *Comm. on Children's Television, Inc. v. Gen. Foods*

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 29 - | CASE NO.: CV 10-03792 DSF (PLAx) |
| --- | --- | --- |

DOCS\544268v1

1    *Corp.*, 35 Cal. 3d 197, 211 (1983); *accord In re Tobacco II Cases*, 46 Cal. 4th at

2    312.  Where, as here, UCL claims under the "fraudulent" prong are not premised

3    on a fraudulent scheme, but on misrepresentations that are likely to deceive,

4    Plaintiffs are not required to plead all of the elements of common law fraud.  *In re*

5    *Mattel, Inc.*, 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008).  Thus Rule 8 applies.[25]

6    As the Complaint sets forth, Citi's conduct is likely to – and did – deceive

7    borrowers by luring them into trial loan modifications with false promises and

8    incomplete representations, which were "couched in such a manner that it is likely

9    to mislead or deceive the consumer, ***such as by failure to disclose other relevant***

10   ***information***."  *Day*, 63 Cal. App. 4th at 332-33 (emphasis added).[26]

11   Citi contends it cannot be liable for representations in the TPP because the

12   TPP is a Treasury/Fannie Mae form.  However, the language of the TPP is not the

13   problem.  Rather, Citi's deception lies in its practice of using the TPP to promise

14   loan modifications it could not and did not timely deliver.  Although the TPP is a

15   government approved form, nothing allows Citi to use the form to indefinitely

16   string borrowers along by promising modifications it does not and cannot timely

17   deliver.  And nothing permits Citi to delay HAMP determinations, refuse to grant

18   permanent HAMP modifications after borrower compliance, evade answering

19   customer inquiries, charge unreasonable fees, or otherwise mislead borrowers into

20   thinking that Citi will help them keep their homes.  Citi adopted the TPP and is

21   responsible for the representations in them.

22   Citi also contends it cannot be liable for failing to reveal the potentially

23   devastating consequences of its trial modifications because it has no "duty to

---

24   [25] Even if Rule 9(b) applies, Plaintiffs meet that standard by alleging the specifics of
25   Citi's offensive conduct.  *See* Part II.E.

26   [26] Citi's arguments that it never promised permanent loan modifications and that it
disclosed negative credit reporting simply rehashes its ***factual*** assertions that the loan
27   modification agreements are not deceptive.  Mot. 33-34; Part III.G.4., *supra*.  Whether
Citi's conduct is deceptive is generally a question of fact.  *Gerber Prods. Co.*, 523 F.3d,
28   at 939 (reversing dismissal of UCL claim).

1    disclose."  However, Citi's exclusive reliance on cases which address the arm's-

2    length loan origination process, not loan modification, is misplaced.  For example,

3    *Chavez v. Bank of Am.*, *N.A.*, No. CV-F-09-2133 OWW/SKO, 2010 U.S. Dist.

4    LEXIS 44369, at *57-58 (E.D. Cal. May 5, 2010), merely notes the "***general*** rule

5    [that] a financial institution owes no duty of care to a borrower when the

6    institution's involvement in the loan transaction does not exceed the scope of its

7    conventional role as a mere lender of money."  The rule that no duty is owed is not

8    absolute, and Citi's role as the administrator of a government-created loan

9    modification program exceeds the "conventional role" of "a mere lender of

10   money."  At a minimum, this argument raises a factual question, not appropriately

11   resolved at the pleading stage.

12          As addressed in Parts II.E and III.G, Plaintiffs plead reliance on Citi's

13   representations and resulting damages.  Plaintiffs suffered injury as a result of their

14   reliance on Citi's promises and representations, and they would not have inquired

15   about or entered into trial modifications had they been aware that Citi's

16   representations regarding its loan modification programs were false, misleading

17   and incomplete.  ¶¶ 228, 236.

18          **K.    Plaintiffs State A Claim Under Florida's Deceptive and**
              **Unfair Trade Practices Act ("FDUTPA")**
19                  **1.    Citi Adopted the TPP Agreement and Is Bound By Its**
                           **Representations**
20
21          The FDUTPA prohibits deceptive and unfair practices or acts "in the

22   conduct of ***any*** trade or commerce."  Fla. Stat. § 501.204(1) (2010) (emphasis

23   added).  FDUTPA creates a private cause of action for violation of standards of

24   unfairness and deception or a violation of any law or regulations proscribing

25   unfair, deceptive or unconscionable act.  Fla. Stat. § 501.203(3).  It also "creates a

26   private cause of action where none exists under federal law."  *Nieman v. Dryclean*

27   *U.S.A. Franchise Co., Inc.*, 178 F.3d 1126, 1129 (11th Cir. 1999).[27]  "[B]y enacting

28   ---
     [27] Citi confuses the issue by arguing that HAMP provides no private cause of action.
     Plaintiffs' claims are not predicated on a HAMP violation, but on Citi's entire course of

     PLAINTIFFS' OPPOSITION TO DEFENDANT'S       - 31 -     CASE NO.: CV 10-03792 DSF (PLAx)
     MOTION TO DISMISS
     DOCS\544268v1

1   the FDUTPA, the legislature clearly intended to establish a new cause of action for

2   the benefit and protection of the consuming public."  *Delgado v. J.W. Courtesy*

3   *Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 606 (Fla. Dist. Ct. App. 1997).

4          Citi again contends it cannot be liable for representations in the TPP because

5   the TPP is a Treasury/Fannie Mae form.  *See* Part III.H.3, *supra* (discussing how

6   neither HAMP nor TPP agreements authorize Citi's conduct). Citi adopted the TPP

7   and is responsible for the statements therein.  *See N. Propane Gas Co. v. Cole,* 395

8   F.2d 1, 1 (5th Cir. 1968).

9          **2.     The FDUTPA Applies to Citi as a Banking Subsidiary**

10          Bank subsidiaries like Citi are not exempt from the FDUTPA.  *Bankers*

11   *Trust Co. v. Basciano*, 960 So. 2d 773, 779 (Fla. Dist. Ct. App. 2007) ("nothing in

12   FDUTPA  suggests  that  banks  subsidiaries  .  .  .  are  necessarily  exempt  from

13   FDUTPA"); *Office of the Attorney Gen. v. Commerce Commercial Leasing, LLC*,

14   946  So.  2d  1253,  1258  (Fla.  Dist.  Ct.  App.  2007)  (bank  subsidiaries  are  not

15   necessarily  exempt  from  FDUTPA).    Although  the  FDUTPA  does  not  apply  to

16   ***banks*** regulated by federal agencies, *see* Fla. Stat. § 501.212(4)(c), Citi admits that

17   it  is  a  bank  ***subsidiary***  and  not  a  bank.   Mot. 27.   Nothing  in  the  Complaint

18   suggests that Citi's conduct is regulated by the OCC or any other federal agency,

19   and,  therefore,  the  FDUTPA  exemption  is  not  triggered.    *See Commerce*

20   *Commercial*, 946 So. 2d at 1258; *Acciard v. Whitney*, No. 2:07-cv-476-UA-DNF,

21   2008 U.S. Dist. LEXIS 98131, at *5 (M.D. Fla. Dec. 4, 2008) (whether a bank is

22   exempt cannot be determined on a motion to dismiss).

23

24   _____

action, including making promises it knew to be false, inducing individuals to enter into
25   TPPs to increase Citi's profit at the borrower's expense, and promoting itself as a
     participant in HAMP while failing to devote adequate resources to make its participation
26   meaningful.  ¶¶ 62, 64, 103, 111, 116, 131. *See Reyes*, 2011 U.S. Dist. LEXIS 2235;
     *Nieman*, 178 F.3d at 1129; *Miguel J. Larach & Great Am. Corp. v. Standard Chartered*
27   *Bank Int'l (Americas) Ltd.*, 724 F. Supp. 2d, 1228, 1238 (S.D. Fla. 2010).  The FDUTPA
     does not attempt to "circumvent the lack of a private right of action under HAMP," but
28   reflects the tenet that state laws may offer more protection than federal laws.  Mot. 12.

Citi's reliance on *Watters v. Wachovia Bank*, 550 U.S. 1, 16, 127 S. Ct. 1559, 167 L. Ed. 2d 389 (2007), is misplaced because *Watters* concerned whether specific state laws interfered with the OCC's regulatory powers, not deceptive practices, and has since been abrogated by § 1044 of Dodd-Frank, Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010) as to bank subsidiaries.  Plaintiffs Plead the Elements of a FDUTPA Claim Under Rule 8 and Rule 9.

Rule 8, not Rule 9, is the governing pleading standard for Plaintiffs' FDUTPA claim.  *Galstaldi v. Sunvest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009) ("The requirements of Rule 9(b) do not apply to claims under the FDUTPA."); *Kenneth F. Hackett & Assoc., Inc. v. GE Cap. Info. Tech. Solutions, Inc*., Case No. 10-20715-CIV, 2010 WL 3981761, at *7 (S.D. Fla. Oct. 8, 2010) (applying Rule 8 to FDUTPA claims).

The FDUTPA's standard of proof for showing misrepresentations or deceit is separate and distinct from that for common law fraud.  *Motmanco, Inc. v. McDonald's Corp.*, No. 3:04-CV-270-J-99HTS, 2005 WL 1027261, at *8 (M.D. Fla. Mar. 30, 2005); *Florida v. Tenet Healthcare Corp*., 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005).  Under the FDUTPA, "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Hetrick v. Ideal Image Dev. Corp.*, No. 09-10762, 2010 WL 1491947, at *6 (11th Cir. Apr. 15, 2010).  Plaintiffs allege that Citi made representations and omissions that misled reasonable borrowers.  ¶ 215.  Citi misled borrowers to believe that as long as they submitted the requisite information (which Plaintiffs did) and timely made their TPP payments (which Plaintiffs did), they would receive a permanent HAMP modification after three (or, at most, four) months of timely payments.[28]  ¶¶ 215-16.

---

[28] *Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc*., No. 8:09-CV-2453-T-30TBM, 2010 WL 2821950 (M.D. Fla. July 16, 2010) is inapplicable.  There, the

1    Even if Rule 9(b) applies to Plaintiffs' FDUTPA claim (which it does not),

2    the allegations satisfy the heightened pleading standard, as detailed in Part II.E,

3    *supra*.

### 3.    Citi's Conduct Is Unfair and Deceptive Under the FDUTPA.

5    A practice is "unfair" if it offends established public policy and is immoral,

6    unethical, oppressive, unscrupulous or substantially injurious to consumers.

7    *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006); *see also*

8    *Orkin Exterminating Co. v. FTC*, 849 F. 2d 1354, 1367 (11th Cir. 1988).   A

9    practice is "deceptive" if it is likely to mislead consumers.   *Zlotnick v. Premier*

10   *Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir.2007); *Rollins*, 951 So. 2d at 869.

11   The FDUTPA does not require consumer reliance.   *Third Party Verification, Inc. v.*

12   *Signaturelink, Inc*., 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007); *Cold Stone*

13   *Creamery, Inc. v. Lenora Foods I, LLC*, 332 Fed. Appx. 565, 567 (11th Cir. 2009).

14   Whether conduct constitutes unfair or deceptive trade practice is a question of fact.

15   *Siever v. BWGaskets, Inc.* 669 F. Supp. 2d 1286, 1293 (M.D. Fla. 2009).[29]

16   Citi's prolonged TPPs were unfair and harmed Plaintiffs and others in

17   various ways.   *See* Part II.C.   Citi deceptively assured borrowers that the trial

18   modification periods were limited and would lead to permanent modification.   ¶¶

19   4, 66, 71.   Even under HAMP requirements, Citi was required to review

20   borrowers' income documentation to determine eligibility for a permanent

21   modification "upon receipt" of TPP documentation.   ¶ 59; TPP § 1.D, E, SD 09-01

22   at 5, 15 ("upon receipt"); SD 09-07 at 7 (after October 8, 2009, review within 30

23   days).   Citi's claim that its delays actually ***helped*** borrowers, or that Plaintiffs

---

26   claims were grounded in fraud in the inducement and relied on conclusory allegations.
Here, Plaintiffs specifically set forth facts to support their claims. *See* Part II.E, *supra*.

27   [29] Citi's reliance on *Dixon v. Countrywide Home Loans*, 710 F. Supp. 2d 1325, 1330-31
(S.D. Fla. 2010) is inapposite because there, all of plaintiff's claims, including FDUTPA,

28   were barred by the statute of frauds.

attempt to write in a timeliness requirement into the TPP has no basis in the Complaint. *See* Part II.E; ¶¶ 74, 119, 125, 137-38 (discussing damages).

Additionally, Citi's failure to provide Plaintiffs adequate information regarding the loan modification program unfairly deprived them of the ability to make rational choices about how to handle their default. *See* Part II.E. Similarly, non-HAMP modifications were unfair because they were disguised as HAMP modifications, yet were significantly less favorable to borrowers. ¶¶ 134-36, 149-50. Citi's repeated imposition of unnecessary inspection fees and other undisclosed junk fees, were unfair and unreasonable. *See* Part III.B.[30]

The FDUTPA, Fla. Stat. § 501.211(1), permits a claim for injunctive relief by "anyone aggrieved" by an unfair or deceptive act. *Kelly v. Palmer*, 681 F. Supp. 2d 1356, 1366 (S.D. Fla. 2010). FDUTPA is "broadly worded to authorize declaratory and injunctive relief even if those remedies might not benefit the individual consumers who filed the suit" and permits a claim for anyone aggrieved by an unfair or deceptive act. *Id.* In fact, a person may be aggrieved even if there is no "actual injury." *Id.*[31] Plaintiffs were aggrieved and suffered losses as a result of Citi's conduct. *See* Part II.E., *supra*.

## IV.   CONCLUSION

For the foregoing reasons, Citi's Motion should be denied in its entirety.

DATED: January 24, 2011          **MILBERG LLP**
                                 JEFF S. WESTERMAN
                                 SABRINA S. KIM
                                 ANDREW J. SOKOLOWSKI

                                 _____
                                        */s/ Sabrina S. Kim*
                                 SABRINA S. KIM

---

[30] Plaintiffs cannot describe the fees with more specificity without discovery. Citi did not disclose the type, nature and amount of fees and expenses being assessed. ¶¶ 213, 216(n), 73, 75.

[31] Plaintiffs' allegations that Citi's inaccurate and incomplete credit reporting are not preempted by the Fair Credit Reporting Act. *See generally In re Equifax*, 96 F.T.C. 884 (1980) (*rev'd in part on other grounds*) (the FTC held that practices not covered by the FCRA were unfair and deceptive).

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 35 - | CASE NO.: CV 10-03792 DSF (PLAx) |
|---|---|---|

DOCS\544268v1

1
2    One California Plaza
     300 S. Grand Avenue, Suite 3900
3    Los Angeles, CA  90071
     Telephone: (213) 617-1200
     Facsimile:  (213) 617-1975
4    Email: jwesterman@milberg.com
       skim@milberg.com
5      asokolowski@milberg.com

6    **MILBERG LLP**
     ANDREI V. RADO
7    arado@milberg.com
     One Pennsylvania Plaza, 49th Floor
8    New York, NY  10119
     Telephone: (212) 594-5300
9    Facsimile:  (212) 868-1229

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS | - 36 - | CASE NO.: CV 10-03792 DSF (PLAx) |
|---|---|---|

DOCS\544268v1